Filed 10/22/20  Feitosa v. Bass CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DENNIS FEITOSA, | B299974 |
| Petitioner and Respondent, | (Los Angeles County Super. Ct. No. 19STRO03023) |
| v. | |
| ADAM G. BASS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Helen Zukin, Judge.  Affirmed.

Cliff Dean Schneider for Defendant and Appellant.

No appearance for Appellant and Respondent.

————————————

## INTRODUCTION

Adam Bass appeals the trial court's issuance of a five-year civil harassment restraining order (Code Civ. Proc., § 527.6) protecting neighbors Dennis Feitosa and Lauren Sciretta.[1] Bass contends the trial court's findings and order were not supported by substantial evidence. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

Bass, a planning commissioner for the City of West Hollywood, lived next door to Feitosa and his girlfriend Sciretta. In the two years that preceded the June 2019 hearing on the restraining order, Bass regularly photographed and recorded Feitosa and Sciretta when they were outside their home.

During 2019, Feitosa and Sciretta provided doggy daycare services out of their home.[2] Bass learned of the business and reported it to the City of West Hollywood's Code Enforcement Division in four different complaints. On May 5, 2019, Bass photographed Feitosa and Sciretta on the sidewalk with a dog. This photograph was included in a complaint Bass filed with local code enforcement that same day.

On May 7, 2019, Feitosa filed a self-represented request for a civil harassment restraining order, seeking protection for himself, his girlfriend, and his assistant, who worked out of their home. Feitosa alleged that the harassment, which involved Bass regularly photographing and videoing them, had been ongoing for over a year and had recently escalated. He requested the court to restrain Bass from filming, photographing, or recording them.

---

[1] All subsequent statutory references are to the Code of Civil Procedure.

[2] On May 8, 2019, Feitosa ended his dog daycare business.

2

On May 29, 2019, Bass, through his attorney, filed a response to the request. In a declaration, Bass attested that his "role as a community leader requires [him] to ensure that the neighborhoods of West Hollywood are safe, code-compliant, and that the residents of West Hollywood thusly enjoy a high quality of life." Bass felt that it was his responsibility to report code violations and other matters that "blight" the streets of his neighborhood. Based on his observations of Feitosa and Sciretta running a doggy daycare business, he photographed them on May 5, 2019 from 150 feet away. Bass attested that Feitosa and Sciretta could not prove that Bass was causing them emotional distress as he had never met them.

The trial court heard two days of testimony in June 2019. Feitosa testified that over the course of two years, he witnessed Bass hide behind objects on the street to photograph Feitosa and Sciretta walking dogs and double parking their car to carry groceries inside.[3] When Bass's counsel questioned how Feitosa knew Bass was photographing him, Feitosa stated Bass "will hide behind a lamppost or behind a tree, and he will lean out from behind the tree with his cell phone pointed at me, and then he will hide behind the tree, . . . and he will lean over again, getting pictures. . . . every instance [Bass] wears a hat and the hat covers part of his face, and he will hide."

Feitosa stated Bass filmed and photographed him and Sciretta daily, and had taken photos of him "maybe over 100 times." Feitosa testified that Bass filed a total of four complaints with the city's code enforcement, but that all of the complaints were closed without penalty or judgment against Feitosa or

---

[3] Feitosa and Sciretta testified that Bass was typically out on the street walking his two dogs when he hid behind objects to photograph them.

Sciretta.  Feitosa also showed through exhibits and testimony that Bass's statements that he had never met Feitosa or Sciretta, and about how close he was when taking the May 5, 2019 photograph were untrue:  Bass had met them on two prior occasions and was much closer than 150 feet for the photo.  The May 5, 2019 photo, which was attached to Bass's complaint to code enforcement was the only photograph Feitosa produced during the trial.  The filming made Feitosa feel uncomfortable and harassed.

Sciretta testified that she had seen Bass photograph her "over 20 times."  Sciretta testified that Bass photographed her from his apartment window, which overlooked her driveway and the street.  This regularly occurred when she had to double park to empty groceries from her car, as she did not have a parking space near her home.  She also stated "whenever I'm walking my dog or if I'm meeting a friend, . . .  If I have friends coming over, he'll go behind – there will be like lampposts or trees, and I'll see him hide behind them, and it's really creepy."

Sciretta testified that six months before the hearing, she was standing in the driveway and taking pictures with friends.  Bass exited his apartment building, crossed the street, watched her and her friends, and pointed his phone toward them as if he was recording them.  She testified:  "He had his phone up, and it was he was looking at us, so it was like a – like an eye contact interaction that made me feel very uncomfortable."  When questioned how Bass held his phone, she stated:  "He had it pointed like up in front of his – like he was like looking at it to take a photo."  Sciretta testified that Bass's persistent recording gave her anxiety, and caused her to go to a therapist and take anxiety medication.  She worried about what Bass was doing with the photos.

4

Feitosa's assistant, who worked out of Feitosa's home, testified that on May 20, 2019 (about a month before the hearing), he was walking down the street towards the Feitosa's home and Bass was walking in the opposite direction, toward him. When he looked up from his phone, the assistant saw Bass immediately in front of him, photographing him. The assistant became nervous, crossed the street, and continued walking toward Feitosa's home. Yet, Bass continued to photograph him and smiled at him "creepily." Bass next hid behind a tree and then crossed the street again, following the assistant.

Bass also testified. Other than the single photo he took on May 5, 2019, he had never photographed Feitosa, Sciretta, or the assistant. He testified that he always takes his phone with him when walking his two dogs and holds the phone directly in front of his face, at least at chin level, because he has a dog leash over his arm and because he is farsighted. He denied hiding behind trees and light poles to photograph or record Feitosa and Sciretta. Bass indicated that he may have ducked down on his walks to clean up after his dogs. Bass also stated that on the day of the driveway incident about which Sciretta testified, he was actually photographing the construction site across the street.

Following testimony and admission of several of Feitosa's exhibits, the court issued its ruling:

> "Pursuant to California Code of Civil Procedure section 527.6, I find that petitioner [Feitosa] has met his burden of proof by clear and convincing evidence that there have been acts of harassment on the part of respondent [Bass].
>
> "The court finds that petitioner was a credible witness as was Lauren Sciretta, in that they described excessive photographing and videotaping, that was creditable to the court, being followed by the

5

respondent. The court recognized that respondent believes he has a role to play in the city, whether on the planning commission or otherwise, to report what he perceives as violations, but the court doesn't find that a role on the planning commission gives one the license to excessively photograph and obviously photograph and videotape and follow to the point of stalking one's neighbors.

"The court did not find respondent to be a credible witness. The court found that his description of his own behavior betrayed a manner of obsessively wanting to monitor his neighborhood, including the petitioners here, and control the outside environment, therefore the court finds that conduct over a period of years of stalking the petitioners while out on the street and harassing them by videotaping their movements, both from his window and out on the street.

"The court found that petitioner and the witnesses were credible in their description that respondent was attempting sometimes to hide behind trees, sometimes to obviously follow them.

"Based upon the evidence presented, the court finds that a reasonable person would be afraid, annoyed, and intimidated by respondent's behavior.

"The court finds it to be harassment.

"The court also finds that the evidence presented a reasonable likelihood that the harassment would continue in the future if a restraining order did not issue."

6

On June 14, 2019, the court issued a five-year civil harassment restraining order protecting Feitosa and Sciretta (but not the assistant), prohibiting Bass from harassing, photographing, filming, or recording either of them, and requiring Bass to maintain a 10-foot distance from them.

Bass appeals.

## *DISCUSSION*

"The elements of unlawful harassment, as defined by the language in section 527.6, are as follows: (1) 'a knowing and willful course of conduct' entailing a 'pattern' of 'a series of acts over a period of time, however short, evidencing a continuity of purpose'; (2) 'directed at a specific person'; (3) '[that] seriously alarms, annoys, or harasses the person'; (4) '[that] serves no legitimate purpose'; (5) [that] 'would cause a reasonable person to suffer substantial emotional distress' and 'actually cause[s] substantial emotional distress to the [the person to be protected by the order]'; and (6) which is not a '[c]onstitutionally protected activity.' " (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.)

To issue a restraining order, the court must find by "clear and convincing evidence that unlawful harassment exists." (§ 527.6, subd. (i).) "The standard of proof known as clear and convincing evidence demands a degree of certainty greater than that involved with the preponderance standard, but less than what is required by the standard of proof beyond a reasonable doubt. This intermediate standard 'requires a finding of high probability.' " (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 998 (*O.B.*).) When "the clear and convincing standard of proof applied in the trial court, an appellate court should review the record for sufficient evidence in a manner mindful of the elevated degree of certainty required by this standard." (*Id.* at pp. 1000–1001.)

Bass asserts that the trial court's finding that Bass had excessively photographed and videotaped was not supported by

7

substantial evidence. He argues there was no evidence of videotaping because no video was introduced at trial and that there was insufficient evidence of photographing because a single photo since was admitted at trial. Bass contends that the court's findings were impermissibly based on "speculative" witness testimony that was "simply not enough to eliminate a substantial doubt that [Bass] could have been taking a picture of himself or simply reading his phone." He asserts "no expert testimony was offered to explain how holding a phone a particular way indicates that a photo is being taken of someone else instead of oneself or simply trying to angle the phone to avoid a glare from the sun."

The problem with Bass's arguments is that he essentially asks us to reweigh the evidence and redetermine credibility findings by the trial court. This we cannot do. The appellate court "must indulge reasonable inferences that the trier of fact might have drawn from the evidence; it must accept the fact finder's resolution of conflicting evidence; and it may not insert its own views regarding the credibility of witnesses in place of the assessments conveyed by the judgment." (*O.B., supra,* 9 Cal.5th at p. 1008.) We "must defer to the trial court's determinations of credibility." (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 498.)

Contrary to Bass's assertions, the testimony of Feitosa, Sciretta, and their assistant provided substantial evidence that defendant excessively photographed and recorded Feitosa and Sciretta. As summarized in the background section, they testified to numerous instances where Bass directed his phone at them, positioned in a manner to take photos or video. An expert is not necessary to explain what Feitosa and Sciretta observed. The common, everyday experience of how cellphones are used to photograph and record is appropriate for lay testimony. (Evid. Code, § 801, subd. (a) [expert opinion admissible if it is "Related

8

to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact . . . ."]).

Feitosa and Sciretta described several instances where Bass hid behind neighborhood trees, lampposts, and other structures, to surreptitiously photograph or record them. Bass's photographing and recording persisted for about one to two years, and culminated in the four complaints he filed against Feitosa and Sciretta with the city. The trial court's express findings gave credence to this testimony.[4] The trial court found Bass's explanation for holding his phone up and pointing it at Feitosa and Sciretta not credible.

Bass argues that the excessive photographing could have a legitimate purpose because the photos were not taken in private spaces, and that "it is beyond absurd to find taking photos of someone taking photos to be harassment." The trial court found otherwise and substantial evidence supported that finding. Feitosa and Sciretta described knowing, willful, and persistent recording and photographing by Bass directed specifically at them that seriously alarmed, annoyed, and harassed them to the point that Sciretta sought medical attention for anxiety. Bass provided no legitimate purpose for his course of conduct other than to say he just coincidentally, regularly held his phone up in a manner that looked like he was photographing them, and that he wasn't actually hiding behind trees or cars—he was really

---

[4]    In its ruling, the court stated it "finds that conduct over a period of years of stalking the petitioners while out on the street and harassing them by videotaping their movements, both from is window and out on the street." Earlier, the court found that Feitosa and Sciretta were credible when "they described excessive photographing and videotaping."

9

picking up dog feces.  The trial court found Bass not credible, and as we have observed, we will not disturb that finding.[5]

### DISPOSITION

The order is affirmed.


RUBIN, P.J.

WE CONCUR:



BAKER, J



KIM, J.

---

[5]     At oral argument, Bass's counsel argued for the first time that any photographs he took were subject to the litigation privilege (Civ. Code, § 47) and were otherwise protected.  His failure to raise this argument either in the trial court or in the briefs filed on appeal forfeits that argument, and we do not address it.